IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


NOELIA SOLIVAN,                    :     CIVIL ACTION
                                   :
        Plaintiff,                 :     NO. 08-2722
                                   :
        v.                         :
                                   :
VALLEY HOUSING DEVELOPMENT         :
CORP.,                             :
                                   :
        Defendant.                 :


## OPINION AND ORDER

**Slomsky, J.**                                         **November 9, 2009**


        Before the Court is Defendant Valley Housing Development Corporation's Motion for

Summary Judgment on all counts (Doc. No. 32).  Plaintiff Noelia Solivan filed a Response in

Opposition to Defendant's Motion for Summary Judgment (Doc. No. 39) seeking denial of the

motion in its entirety.

        On May 9, 2007, Plaintiff filed suit in the Middle District of Pennsylvania against

Defendant Valley Housing Development Corporation and Defendant United-Raad Balliet

Investments.  The case was transferred to this Court on June 11, 2008.  In Count I of the

Complaint, Plaintiff alleges a claim for negligence.  In Count II, Plaintiff alleges a violation of

the Fair Housing Act ("FHA").  In Count III, Plaintiff alleges a violation of Section 504 of the

Rehabilitation Act ("RA").  In Count IV, Plaintiff alleges a violation of Title II of the Americans

with Disabilities Act ("ADA").  In Counts V and VI, Plaintiff alleges violations of her civil

rights under 42 U.S.C. §§ 1981, 1983.

On September 17, 2009, Defendant Valley Housing Development Corporation filed the instant Motion for Summary Judgment (Doc. No. 32).[1]

I.      STATEMENT OF FACTS

The following facts are viewed in the light most favorable to Plaintiff as the non-moving party.  Defendant Valley Housing Development Corporation (hereinafter "Defendant") is a nonprofit entity created by the Lehigh County Housing Authority.  Pl. Mem. Opp. Def. Mot. Summ. J., 4 (hereinafter "Pl. Mem. Opp. Mot.").  Defendant leases the premises in question and rents out apartment units to qualified, low income tenants selected from the Housing Authority's applicants.  Id.  Plaintiff has been a resident of Defendant's apartment building since May 2000.  Pl. Mem. Opp. Mot., 1; Br. Supp. Mot. Summ. J. Of Def., 2 (hereinafter "Br. Supp. Def. Mot.").  This lawsuit arose from a fall Plaintiff suffered in her building on November 14, 2005. Pl. Mem. Opp. Mot., 1; Br. Supp. Def. Mot., 2

Plaintiff was initially living on the third floor of the apartment building, which did not have an elevator.  Pl. Mem. Opp. Mot., 1; Br. Supp. Def. Mot., 2  In June 2002, Plaintiff submitted a note from a physician to the property manager which requested that she be moved to any available first floor apartment due to her medical condition.  Pl. Mem. Opp. Mot., 2-3; Br. Supp. Def. Mot., 2.  Her physical condition prevented her from engaging in any strenuous activity.[2]  Pl. Mem. Opp. Mot., 2-3.  Thereafter, Plaintiff made numerous verbal requests to rent

---

[1] The second defendant, United-Raad Balliet Investments, also filed a Motion for Summary Judgment (Doc. No. 33).  On October 19, 2009, Defendant United-Raad Balliet Investments was dismissed from this case with prejudice (Doc. No. 45) pursuant to a stipulation submitted by the parties (Doc. No. 43).

[2] Plaintiff suffers from a variety of medical conditions, including diabetes, hypertension, depression, and asthma.  Pl. Mem. Opp. Mot., 1.

a first floor apartment in exchange for her unit on the third floor. Pl. Mem. Opp. Mot., 2. On November 14, 2005, Plaintiff, while still residing on the third floor, fell near the stairs in a common area outside of her apartment. Id. at 5; Br. Supp. Def. Mot., 2. Prior to the fall, Plaintiff made several trips up and down the stairs and ran several errands throughout the day, which she asserts eventually caused fatigue, leading to her fall. Pl. Mem. Opp. Mot., 5; Br. Supp. Def. Mot., 3-4. Plaintiff was transported to a hospital by ambulance and remained there for ten days. Pl. Mem. Opp. Mot., 5. On December 6, 2005, Plaintiff returned to the hospital and underwent an amputation of her left leg from a point above her knee, allegedly stemming from injuries and complications arising from her November 14, 2005 fall. Id. at 5.

Two apartments became available for occupancy on the first floor between Plaintiff's initial request for a transfer and the date of her fall. One apartment, which became available twice, was reserved for wheel-chair bound tenants, and in both situations, a wheel-chair bound tenant moved into the unit. Br. Supp. Def. Mot., 4. A third vacancy occurred in June 2005, but Defendant alleges it was not ready for occupancy due to the condition it was left in by the prior tenant, and even if it was ready, there was another person ahead of Plaintiff on a waiting list maintained by Defendant for first-floor apartments. Br. Supp. Def. Mot., 5.

Plaintiff claims that maintenance failed to timely do a move-out inspection on the first floor apartment that became available in June 2005, that a move-out inspection was not performed until after Plaintiff fell, and that Defendant has not produced the "transfer list" showing another tenant ahead of Plaintiff on the waiting list for first floor apartments. Pl. Mem. Opp. Mot., 2-3. Plaintiff also alleges that due to a change in property management employees, there was a lack of communication and action regarding the potential transfer. Id. at 3.

## II.    SUMMARY JUDGMENT STANDARD

Granting summary judgment is an extraordinary remedy.  Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Am. Eagle Outfitters v. Lyle & Scott Ltd., No 08-4807, at 11 (E.D. Pa Sept. 11, 2009).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inference from the evidence, in the light more favorable to the nonmoving party.  Liberty Lobby, 477 U.S. at 252.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party.  Liberty Lobby, 477 U.S. at 255. Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury."  Liberty Lobby, 477 U.S. at 251-52.


## IV.    DISCUSSION

Defendant asserts it is entitled to summary judgment for seven reasons:  1) Plaintiff's

4

claim for negligence fails for lack of evidence showing Valley Housing breached a duty owed to her and that any breach of duty caused her injury;[3] 2) Plaintiff's claims are barred by the applicable statutes of limitations;  3) Plaintiff does not have standing to bring a claim for violation of the FHA, ADA or RA because she did not have a handicap or disability as defined under the Acts;  4) Plaintiff's claims for violation of the FHA, ADA and RA must fail for lack of evidence showing that Defendant discriminated against Plaintiff because of her alleged disability, and for lack of evidence showing Defendant failed to reasonably accommodate Plaintif;  5) Plaintiff's claims for violation of the FHA, ADA and RA fail for lack of supporting expert testimony;  6) Plaintiff is not entitled to recover under the FHA, ADA or RA for the physical injuries she allegedly sustained as a result of her fall; and  7) Plaintiff's claim under 42 U.S.C. § 1983 fails for lack of evidence showing Defendant acted under color of state law.  For reasons set forth below, the Court agrees with Defendant's argument regarding Plaintiff's claim under 42 U.S.C. § 1983, but disagrees with Defendant's other arguments.  Consequently, the Motion for Summary Judgment will be granted in part and denied in part.


**A.      The Fair Housing Act, Americans with Disabilities Act, and Rehabilitation Act**

Courts considering combinations of claims raised under the Fair Housing Act, Americans with Disabilities Act, and Rehabilitation Act have noted that the Acts contain "similar language and related purposes."  Spieth v. Bucks County Housing Authority, 594 F. Supp. 2d 584, 590 (E.D. Pa. 2009) (discussing the similarity of the ADA and RA).  Regarding the ADA and RA,

---

[3]Plaintiff's Count I claim for negligence was dismissed on October 19, 2009, along with the dismissal of Defendant United-Raad Balliet Investments.  Defendant's Motion for Summary Judgment on Count I is denied as moot.

5

Congress has explicitly directed that the two statutes "be construed and applied consistently." Spieth, supra (citing Yeskey v. Commonwealth of Pennsylvania Dept. of Corrections, 118 F.3d 168, 170 (3d Cir. 1997)). Regarding similarities between the FHA, ADA and RA, the Acts contain instances of nearly identical language, such as the definition of "handicap" in the FHA and RA and of "disability" in the ADA. In such contexts, the Court will discuss the statutes in a generic fashion. See Cohen v. Township of Cheltenham, 174 F. Supp. 2d 307, 324 (E.D. Pa. 2001) (noting that the definitions of "handicap" and "disability" are "virtually identical and are therefore used interchangeably" (internal citation and quotation marks omitted)). The FHA, however, has provisions that are different from the ADA and RA, such as the inclusion of a statute of limitations. Pondexter v. Dept. of Housing and Urban Dev., 2009 WL 1143161, *2 (3d Cir. 2009). To the extent necessary in this Opinion, the Court will note the difference and discuss the statutes separately.

**B.     Statute of Limitations**

Defendant asserts that the claims under the FHA, ADA and RA are subject to a two year statute of limitations, and that Plaintiff's claim was filed nearly five years after the statutes were allegedly violated. Brief Supp. Def. Mot, at 11, 19, 25. Defendant argues that Plaintiff's claim is premised on Defendant's refusal to honor her request for a first floor apartment, that her request was rejected nearly five years before suit was filed, and that the "continuing violation" doctrine as alleged by Plaintiff to extend the statute of limitations does not apply. Id. Plaintiff asserts that the statute of limitations does not begin to run until she had discovered she was being discriminated against, and that when this discovery occurred, she filed suit well within the two-year statute of limitations. Pl. Mem. Opp. Mot., at 13-14. Plaintiff also asserts two alternative

arguments:  1) the "continuing violations" doctrine is applicable here, id. at 14-16; and 2)

Defendant's discriminatory act could not have occurred until a reasonable accommodation was

both possible and denied, id. at 17.  Since a first floor apartment fitting her specific need became

available in June 2005, filing suit in May 2007 was within the two year statute of limitations.  Id.

The FHA has a two year statute of limitations.  The limitations period runs from the

occurrence or the termination of an alleged discriminatory housing practice.  42 U.S.C. §

3613(a)(1)(A).  The ADA and RA do not contain a statute of limitations within their statutory

scheme, and they are not subject to the default four-year statute of limitations for federal

statutes, as they were enacted before the default became effective.  Disabled in Action of

Pennsylvania v. Southeastern Pennsylvania Transportation Authority, 539 F.3d 199, 208 (3d Cir.

2008).  Instead, they are subject to the "general assumption that when a federal statute is silent as

to a statute of limitations, the court should apply 'the most closely analogous statute of

limitations under state law.'"  United Steelworkers of America, AFL-CIO-CLC v. Crown Cork

& Seal Co., Inc., 32 F.3d 53, 56 (3d Cir. 1994) (quoting DelCostello v. International

Brotherhood of Teamsters, 462 U.S. 151, 158 (1983)); see Disabled in Action, supra (applying

the same rule).  The Third Circuit has held that for claims under Title II of the ADA and Section

504 of the RA, "Pennsylvania's two-year statute of limitations for personal injury claims" is the

most closely analogous and has applied that limitations period to ADA and RA claims.  Id.  This

Court is bound to do the same.

Plaintiff correctly notes that the statute of limitations would not begin to run under any of

the statutes until an alleged discriminatory practice occurred.  E.g., 42 U.S.C. 3613(a)(1)(A)

(providing that a cause of action may be brought no later than two years after "the occurrence. . .

7

of an alleged discriminatory housing practice").   Here, such discriminatory practice consists of a

"refusal to make reasonable accommodations in rules, policies, practices or services," 42 U.S.C.

§ 3604(f)(3)(B); 42 U.S.C. § 12182 (b)(2)(A)(ii), which would not occur until Plaintiff's request

for a first floor apartment was both available and denied to her.   Considering the facts in the light

most favorable to Plaintiff, a first floor apartment that met Plaintiff's specific requirements

became available for accommodation and was denied to Plaintiff for the first time in June 2005,

within two years of the filing of the Complaint in May 2007.[4]   Pl. Mem. Opp. Mot., at 17; Gogel

Dep., at 18-26 (indicating that apartment A1 became vacant on June 10, 2005, according to

Defendant's records, and that the only prior availabilities following Plaintiff's initial request

were of a wheelchair-accessible apartment that was given to wheelchair-bound tenants).[5]

Plaintiff's claims under the FHA, RA and ADA therefore are not barred by the statute of

limitations.

### C.  Whether Plaintiff is Disabled

Defendant asserts that the evidence does not support Plaintiff's claim that she suffers

from impairments that substantially limit major life activites, and that Plaintiff's testimony

regarding her physical activities preceding her fall demonstrate that she was "by no means

substantially limited in her ability to perform such [major life] activities."   Br. Supp. Def. Mot.,

at 13-15.   Plaintiff asserts that she has submitted sufficient evidence demonstrating that she

---

[4] Because Plaintiff's Complaint was filed within the two year statute of limitations, it is not necessary for the Court to rule on the applicability of the discovery rule or the continuing violations doctrine.

[5] Defendant's placement of wheelchair-bound tenants in a wheelchair accessible unit ahead of Plaintiff, who was not in a wheelchair prior to her November 2005 fall, would not constitute a failure to provide a reasonable accommodation.

suffers from a disability or handicap within the statutory definitions of the FHA, ADA and RA. Pl. Mem. Opp. Mot., at 17-18.

The ADA defines "disability" with respect to an individual as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[6] 42 U.S.C. § 12102(2). "The determination of whether a disability exists should be made on a case-by-case basis." Khalil v. Rohm and Haas Co., 2008 WL 383322, *8 (E.D.Pa. 2008) (internal citation and quotation marks omitted). Courts have noted that the determination of whether an impairment substantially limits a major life activity "is at least a mixed question of fact and law, if not entirely a factual one." Id.

Here, Plaintiff has presented evidence that prior to her fall, she suffered from depression, diabetes, hypertension, shortness of breath and bronchitis. Pl. Mem. Opp. Mot., 1; Pl. Dep., 22-27, 43-45, 46-47. Plaintiff testified at her deposition that at all times leading up to her fall, she had to stop and rest after walking one-half block due to her shortness of breath, and that it took her approximately 30 minutes to ascend two flights of stairs. Id. at 53-56. She took breaks every six to seven steps. Id. at 56. This evidence shows that Plaintiff was substantially limited in major life activities such as walking, breathing, performing manual tasks and caring for herself. Viewing the evidence in the light most favorable to Plaintiff, and "accepting that the issue is primarily a factual one," Khalil, supra at *10, Plaintiff has raised sufficient evidence that there is a genuine issue of material fact as to whether Plaintiff's impairments substantially limited her major life activities.

---

[6]"The definitions of 'handicap' in both the FH[A] and the [RA] . . . as well as the definition of disability in the [ADA] . . . are 'virtually identical' and are therefore used interchangeably." Cohen, supra at 324 (quoting Support Ministries for Persons with AIDS, Inc v. Village of Waterford, 808 F. Supp. 120, 130 (N.D.N.Y. 1992).

**D.  Whether Defendant Failed to Reasonably Accommodate Plaintiff**

Defendant asserts that Plaintiff's claims for violation of the FHA, RA and ADA fail for lack of evidence tending to show that Defendant discriminated against Plaintiff because of her alleged disability/handicap, and for lack of evidence tending to show that Defendant failed to reasonably accommodate Plaintiff.  Br. Supp. Def. Mot., at 15-16, 20-21, 25-26.  Plaintiff asserts that the relevant statutes do not require Plaintiff to show Defendant discriminated on the basis of Plaintiff's disability, and that it is sufficient to show that Defendant failed to provide a reasonable accommodation.  Pl. Mem. Opp. Mot., 20.

Under the ADA, RA and FHA, persons providing public accommodations, programs receiving federal funds, and housing providers are prohibited from discriminating against individuals on the basis of disability or handicap.  42 U.S.C. § 12182 (a); 42 U.S.C. § 3604; 29 U.S.C. § 794(a).  These statutes define discrimination to include "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such . . . accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii) (defining discrimination under the ADA); see 42 U.S.C. § 3604(f)(3)(B) (defining discrimination under the FHA to include refusal to make "reasonable accommodations"); Spieth, supra at 590 (noting Congress has directed that the ADA and RA "be construed and applied consistently").  Courts considering FHA claims explicitly require a plaintiff to show "that the accommodations that [she] requested are necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling."  Id. at 593.  Courts considering claims under the ADA note, in pertinent part, that "modifications are not required if the entity can demonstrate that taking such steps would result in an undue burden."  Haas v.

Wyoming Valley Health Care System, 465 F. Supp. 2d 429, 435 (M.D. Pa. 2006); Judy B. V. Borough of Tioga, 889 F. Supp. 792, 799 (M.D. Pa. 1995) (engaging in the same analysis for an FHA claim).   To determine whether Defendant failed to reasonably accommodate Plaintiff under the FHA, RA and ADA, the Court must consider:  1) whether Plaintiff's requested accommodation/modification was necessary to afford her an equal opportunity to use and enjoy the dwelling; and 2) whether Plaintiff's requested accommodation was reasonable, or whether it imposed an undue hardship on Defendant.

To show that a requested accommodation is necessary, a plaintiff "must show that, but for the accommodation, [she] will likely be denied an equal opportunity to enjoy the housing of [her] choice."  Lapid-Laurel, LLC v. Zoning Bd. Of Adjustment of Twp. Of Scotch Plains, 284 F.3d 442, 461 (3d Cir. 2002).  Here, without the accommodation of a first floor apartment, Plaintiff was required to walk up two flights of stairs in order to enter or leave her apartment.  Pl. Dep., 56.  Plaintiff has presented evidence that due to her medical condition, it took her approximately 30 minutes to ascend two flights of stairs, taking breaks every six to seven steps, requiring about four breaks per trip to catch her breath.  Id. at 53, 55-56.  This evidence raises a triable issue of fact as to whether Plaintiff's placement on the third floor denied her "an equal opportunity to enjoy the housing of [her] choice," Lapid-Laurel, supra.  Plaintiff has also raised a genuine issue of material fact as to whether Plaintiff's requested accommodation was a necessary one given her medical condition.

"The determination of whether an accommodation is reasonable is a question of fact to be decided by a jury," so that the only issue on a motion for summary judgment is whether Plaintiff presented sufficient evidence to raise a triable issue of fact.  Bowers v. National

11

Collegiate Athletic Ass'n, 563 F. Supp. 2d 508, 524 (D.N.J. 2008) (citing Buskirk v. Apollo Metals, 307 F. 3d 160, 170 (3d Cir. 2002)). Here, Plaintiff has presented evidence that a first floor apartment was vacant as of June 2005, that Defendant failed to timely inspect and repair the vacant apartment in order to make it available before her accident, that Defendant has not submitted sufficient proof to establish that another tenant was listed ahead of Plaintiff on a waiting list for the first floor apartment, and that Defendant did not transfer Plaintiff before her fall because Plaintiff owed "arrearages" on her apartment. Ohm Dep., 24 (indicating unit A01 was vacant in June of 2005); Id. at 24-27 (suggesting that Defendant's employee did not begin to expedite repairs to unit A01 until after Plaintiff's fall); Gogel Dep., 24 (indicating the witness did not remember when the second tenant was placed on the waiting list); Id. at 34 ("I told her I don't transfer persons owing money."). Accordingly, Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether Plaintiff's requested accommodation was reasonable and as to whether Defendant failed or refused to provide her such reasonable accommodation as required by law.

**E.      Whether Plaintiff Must Present Expert Testimony**

Defendant asserts that Plaintiff's claims require supporting expert testimony. Plaintiff has not identified a proposed expert. Br. Supp. Def. Mot., 10. Plaintiff asserts that expert testimony is not required to establish liability in this matter, and that treating physicians can establish causation and damages. Pl. Mem. Opp. Mot., 12.

The standard for whether expert testimony is required under federal law is as follows:

Expert testimony is not necessary . . . if all the primary facts can be accurately

12

and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.

Padillas v. Stork-Gamco, Inc., 186 F.3d 412, (3d Cir. 1999).  Here, Plaintiff has presented evidence in the form of medical records and a doctor's note showing she had a medical condition that prevented her from engaging in strenuous activity that could cause extreme fatigue, Pl. Mem. Opp. Mot., 13.  Plaintiff contends that Defendant's failure to move her to a first floor apartment caused her to experience extreme fatigue, leading to her fall on the day in question. Id.  Although expert testimony might be admissible to assist Plaintiff in carrying this burden of proof, evidence from treating physicians will allow members of the jury to comprehend the primary facts and draw correct conclusions from the evidence without the need for additional expert witnesses.  See Padillas, supra (holding that because the case is at summary judgment stage, "it is premature to rule out that" plaintiff's non-expert testimony is sufficient to establish her cause of action).  Plaintiff's claims therefore do not fail for lack of a supporting expert witness.


F.      **Recovery for Physical Injuries Under the FHA, RA and ADA**

Defendant asserts that Plaintiff is not entitled to recover damages under the FHA, RA, or ADA for physical injuries she allegedly sustained as a result of her fall, including punitive damages.  Br. Supp. Def. Mot., 17-18, 22-23, 26-27, 30-31.  Plaintiff asserts that she is entitled to recover for all of her injuries under the FHA, RA and ADA, including punitive damages.

Under the FHA, both actual and punitive damages are available. 42 U.S.C. § 3613(c). Nothing in the language of the act suggests a limitation on the type of "actual damages" a plaintiff may recover. Samaritan Inns, Inc. v. District of Columbia, 114 F.3d 1227, 1233 (D.C. Cir. 1997). Actual damages are defined as "an amount awarded to a complainant to compensate for a proven injury or loss." Blacks Law Dictionary, 445 (9th Ed. 2009). The Supreme Court has noted that an action for damages under the FHA "'sounds basically in tort – the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach.'" Samaritan Inns, Inc., supra (quoting Curtis v. Loether, 415 U.S. 189, 195 (1974)); see Meyer v. Holley, 537 U.S. 280, 285 (2003) (citing Curtis as the legal standard for this proposition). Courts have held "actual damages" in housing discrimination cases include compensation for "inconvenience, mental anguish, humiliation, embarrassment, expenses and deprivation of constitutional rights." Morehead v. Lewis, 432 F. Supp. 674, 678 (N.D.Ill. 1977). Actual damages under the FHA include compensation for physical injuries.

Punitive damages may be awarded under the FHA. 42 U.S.C. § 3613(c)(1). Punitive damages are available where "malicious," "willful or wanton conduct can be shown;" "the final determination of whether punitive damages should be awarded [is] left to the trier of fact." Morehead, supra at 679. The Court will, however, withhold a decision on submitting the request for punitive damages to the jury until evidence is heard at trial.

Under the RA, "compensatory," but not punitive damages may be awarded. Barnes v. Gorman, 536 U.S. 181, 185-89 (2002). Compensatory damages are synonymous with actual

damages.  <u>Weider v. Hoffman</u>, 238 F. Supp. 437, 445 (M.D.P.A. 1965); <u>Morehead</u>, <u>supra</u> at 678.

Compensatory damages for physical injuries may be awarded under the RA.

In regard to Plaintiff's claim under the ADA, in her Response to Defendant's Motion for Summary Judgment, Plaintiff sets out the "Defendant's Obligations to Ms. Solivan under the Americans with Disabilities Act."  Pl. Mem. Opp. Mot., 9.  In this argument, Plaintiff points to the "public accommodations" section of the ADA, 42 U.S.C. § 12182, as the basis for Plaintiff's ADA claim.  <u>Id</u>.  Plaintiff's Complaint, however, does not specifically identify which provision of the ADA forms the basis of her claim, and instead simply cites to Title II of the ADA.  Pl. Compl., ¶¶ 77-81 (citing to 42 U.S.C. § 12101 et seq.).  Although Plaintiff's Complaint does seem to suggest some reliance on the "public entity" section of the ADA, 42 U.S.C. § 12132, it omits any citation to a specific statutory section.  <u>Id</u>.  The Complaint asserts that Defendant is a "public entity" under the statute and that Defendant "denied Plaintiff the benefits of the housing program and services by reason of her disability," language which mirrors the language of the "public entity" provision found in § 12132.  Pl. Compl., ¶¶77, 79.  However, as noted above, Plaintiff's only clear reference to a specific section of the ADA as providing the basis for her claim occurs in the Response to the Summary Judgment Motion, where she cites 42 U.S.C. § 12182, the public accommodation provision of the ADA.  Pl. Mem. Opp. Mot., 9.  The Court therefore concludes that Plaintiff's claim arises out of the public accommodation provision of the ADA, 42 U.S.C. § 12182.

Under the section of the ADA prohibiting discrimination in public accommodations, private plaintiffs may not obtain monetary damages.  Preventive relief, including an injunction or restraining order, is the only remedy.  42 U.S.C. § 12188 (a)(1) (providing that "the remedies

and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter;" 42 U.S.C. § 2000a-3(a) describes preventive relief); see Devlin v. Hammontree, 561 F. Supp. 2d 118, 119 (D. Me. 2008) (holding that money damages are unavailable to private plaintiffs under the public accommodations section of the ADA); Goodwin v. C.N.J., Inc.,436 F.3d 44, 50 (1st Cir. 2006) (holding that section 12188(a)(1) does not contemplate awarding money damages in suits brought by private parties). Money damages are therefore not available to Plaintiff on her ADA claim.

## G.     Plaintiff's § 1983 Claim

Defendant asserts that Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 fail because Defendant did not violate any federally protected right of Plaintiff and because Defendant was not acting under color of state law. Br. Supp. Def. Mot., 28-29. Plaintiff acknowledges that she has no redress pursuant to § 1981, but asserts that Defendant did violate Plaintiff's federally protected rights under the state-created danger theory, and that Defendant was acting under color of law as a provider of federally-subsidized housing. Pl. Mem. Opp. Mot., 24.

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). "'Merely private conduct, no matter how discriminatory or wrongful,'" is excluded from the reach of § 1983. Id. (quoting Blum v. Yaretsky, 457 U.S. 991, 1002(1982)). Whether a private entity acted under color of law "turns on whether there is a

sufficiently 'close nexus between the State and the challenged action.'" Young v. Halle Housing Assoc., 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001) (quoting Jackson v. Metro Edison Co., 419 U.S. 345, 351 (1974)).

Plaintiff alleges that Defendant, a non-profit entity, was established by the Lehigh County Housing Authority in 1982, and that Defendant receives federal Housing and Urban Development funds through the Lehigh County Housing Authority (hereinafter "Housing Authority")  for the purpose of providing affordable rental housing to low and moderate-income tenants.  Pl. Mem. Opp. Mot., 4.  Plaintiff therefore asserts that Defendant was acting under color of law as a provider of federally-subsidized housing pursuant to Section 8 when it failed or refused to reasonably accommodate Plaintiff and thus created the danger that caused her injury. Id. at 24.  The actions here, however, were not performed under color of state law, since Defendant is not a state actor.

Cases considering the application of 42 U.S.C. § 1983 against housing providers who accept and even rely exclusively on Section 8 vouchers hold that such housing providers are private actors who are not acting under color of state law.  Miller v. Hartwood Apartments, 689 F.2d 1239, 1242 (5th Cir. 1982); Young, supra at 366; see Morris v. Dehaan, 1991 U.S. App. Lexis 22135, *10 (6th Cir. 1991); Tosta v. Williams, 1987 WL 17233, *3 (E.D.P.A. 1987). Providing government funds to a private entity, "no matter how extensive," is not sufficient to transform private conduct into state action, and the "'mere fact that a business is subject to state regulation does not by itself convert its action into that of the state' . . . 'unless the private decision is compelled or even influenced by any state regulation.'" Young, supra at 362 (quoting Jackson, supra at 351, and Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982)).  Courts

considering analagous cases hold that even where the housing provider is "totally reliant upon government funding both for [construction costs] and for the rent subsidies it receives," it is still not a state actor, and not acting under color of state law. Young, supra at 362-63, 366 (internal citation and quotation marks omitted); Miller, supra at 1242 ("If the apartments had been staffed by government-paid personnel, or if the questions of tenancy and eviction were required to be submitted for governmental approval, this could be a different question. Given the private operation of [Defendant], however, we cannot say the appellees' actions were in any way" under color of state law). Even where a government entity "mandates rents, eligibility criteria for residents . . . and . . . pays to staff the building while retaining the right to remove managers," courts have held that there is no state action where plaintiffs proffer insufficient evidence regarding the government entity's "involvement in the promulgation and enforcement of the challenged [policy or action]." Young, supra at 364.

Defendant here is a 501(c)(3) non-profit corporation that "create[s], develop[s] [and] manage[s] affordable housing opportunities for . . . low income [and] moderate income families." Beers Dep., 5-6; Pl. Compl., ¶ 3 ("[Defendant is] a non profit entity that received federal HUD funds through the Housing Authority for the purpose of providing affordable rental housing opportunities to low and moderate-income individuals"). Of the properties operated by Defendant, only one, the building where Plaintiff resided, is directly government subsidized. Id. at 6-7. Tenants in other buildings under Defendant's control receive government housing vouchers, which are then remitted to Defendant as rental payments. Id. As explained by one of Defendant's employees, the difference between Defendant and Housing Authority is as follows:

"Housing Authority is public housing. Valley Housing Development Corporation are privately run developments [*sic*], they have limited partnerships with investors." Gogel Dep., 6-7.

Beyond her description of Defendant as a non-profit entity created by the Housing Authority, Pl. Mem. Opp. Mot., 4, and a bald assertion that Defendant was "acting under color of law as a provider of federally-subsidized housing pursuant to Section 8," Id. at 24, Plaintiff does not direct the court to any facts or authority tending to show Defendant acted under color of law or as a state actor. A careful review of the record reveals a suggestion that Defendant's former property manager, Ruby Gogel, was employed by the Housing Authority but "assigned to [Defendant]." Gogel Dep., 6-7. Ms. Gogel, however, also affirmed that she "worked for" Defendant and that Defendant's Executive Director was her boss. Id. at 7. Ms. Gogel, along with Ms. Ohm, who succeeded Ms. Gogel and "worked for" Defendant, were involved in the management of Plaintiff's building before her fall. Ms. Ohm was the official property manager between June and November 2005. Ohm Dep., 7-10; Pl. Mem. Opp. Mot., 3 (noting Ms. Gogel testified that as of June 2005 "she was no longer responsible for medical transfer requests, and that transferring Ms. Solivan would not have been her 'call'").

The vague suggestion that an individual involved in Defendant's failure to accommodate Plaintiff might have been employed by the Housing Authority is insufficient to establish Defendant acted under color of state law, particularly in light of the fact that she was supervised by Defendant's Executive Director, and the fact that Defendant was a non-profit entity only partially reliant on government housing vouchers and subsidies, and entirely separate from the Housing Authority. Since Defendant is not a state actor and was not acting under color of law,

Plaintiff has failed to establish a necessary element of her claim under 42 U.S.C. § 1983. Summary judgment in favor of Defendant on Counts V and VI is appropriate.


V.      **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part.  Only Counts V and VI against Defendant will be dismissed in accordance with this Opinion.  Count I was previously dismissed by stipulation of the parties.  (Doc. No. 45).  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


NOELIA SOLIVAN,            :           CIVIL ACTION

                             :

      Plaintiff,              :           NO. 08-2722

                             :

      v.                   :

                             :

VALLEY HOUSING DEVELOPMENT    :

CORP.,                     :

                             :

      Defendant.           :


**ORDER**


AND NOW, this 9th day of November, 2009, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 32) and Plaintiff's Response thereto (Doc. No. 39), and after a complete review of all pleadings, discovery and affidavits on file, it is hereby ORDERED that said Motion is GRANTED IN PART AND DENIED IN PART. The Motion is DENIED as to Counts II to IV and GRANTED as to Counts V and VI, which are DISMISSED. Count I has been dismissed by stipulation of the parties (Doc. No. 45).


BY THE COURT:


 Joel H. Slomsky, J.    

JOEL H. SLOMSKY, J.